ROMANUS J. BUCKLEY, REVENUE COMMISSIONER OF THE DEPARTMENT OF COLLECTION OF THE CITY OF PHILADELPHIA, PLAINTIFF-APPELLANT, v. FULTON B. HUSTON, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1971—Decided July 9, 1971.

368

Before Judges CONFORD, KOLOVSKY and CARTON.

*Mr. Albert J. Persichetti,* Deputy City Solicitor of Philadelphia, Pennsylvania, admitted *pro hac vice,* argued the cause for appellant (*Messrs. Tort & Daniels,* attorneys).

*Mr. Martin F. McKernan* argued the cause for respondent.

The opinion of the court was delivered by

CONFORD, P. J. A. D. This is an appeal from a judgment of the Atlantic County District Court denying recovery by the taxing authority of the City of Philadelphia of delinquent wage taxes due over a long period of time from defendant, a New Jersey resident who was employed during that period in Philadelphia.

The issues argued before us have revolved around two questions: (a) whether New Jersey has authorized collection here of this tax by enactment in 1962 of an amendment of *N. J. S. A.* 54:8A–46 (*L.* 1962, *c.* 70, § 9); (b) whether, independent of the statute, New Jersey should as a matter of general policy allow its courts to be used for recovery of taxes owing to an out-of-state taxing jurisdiction.

We have concluded (1) that by the enactment of the statute cited above the Legislature has made the terms and conditions of that act the conclusive criteria for the existence *vel non* of a right of recovery of the taxes here involved, and (2) that the act, properly construed, precludes recovery.

In 1961 the Legislature adopted *L.* 1961, *c.* 32, commonly known as the Emergency Transportation Tax Act. The purpose of the act was to raise money to meet the costs of solution of commuter transportation problems in so-called critical commuter areas comprising parts of New Jersey and other states — such areas to be designated annually by the Commissioner of Transportation. The act provided for a New Jersey state income tax on New Jersey residents deriving income in the critical commuter area of the other state and

on residents of that state deriving income within the critical commuter area here, with a contemplated scheme of credits by either such state (New York long has provided for such a credit) against income taxes imposed by it for the amount of payments of tax to the other. From the beginning the only critical commuter area designated administratively has been the New York-New Jersey metropolitan area.

In 1962 the act was amended (*L.* 1962, *c.* 70, § 9) to provide as follows (*N. J. S. A.* 54:8A–46) :

(a) At the request of the Division of Taxation, the Attorney General may bring suit, in the name of this state, in the appropriate court of any other State to collect any tax legally due this State under this act.

(b) The courts of this State shall recognize and enforce liabilities for taxes lawfully *imposed by any other State, upon incomes,* which extends a like comity to this State, and the duly authorized officer of any such State may sue for the collection of such a tax in the courts of this State. * * *

(c) For the purposes of this section, the words "tax" and "taxes" shall include interest and penalties due under this act, and liability for such interest or penalties or both, due under a taxing statute of another State shall be recognized and enforced by the courts of this State to the same extent that the laws of such other State permit the enforcement in its courts of liability for such interest or penalties or both, due under this act. (Emphasis added.)

██ The county district court held that the provisions of (b) of the foregoing were controlling, and that since it specified only taxes imposed by another *"State"* as the permitted object of an action here, taxes imposed by a *municipality* in another state were not intended to be recoverable here. Although we disagree with the approach of the county district court in regarding the statutory provision as a taxing statute, and therefore of a category which should be construed in favor of the taxpayer, we nevertheless agree with the result reached. The pertinent provisions of *N. J. S. A.* 54:8A–46 are not taxing legislation but of a jurisdictional nature. The act should be fairly construed in the light of its language and such appropriate indicia of actual legislative intent as are available.

■ We believe that when the legislators referred in (b) to "taxes * * * imposed by any other State," they were using the term "State" as it would be understood in common parlance, *i. e.,* to describe taxes imposed by the legislature of another state, assessed and collected by state officials and deposited into the general state treasury for use as appropriated by the legislature. This is to be contrasted with local taxes, which, although authorized by the state legislature, are assessed, collected and disbursed locally and for local governmental purposes.

Several separate considerations, over and above the common signification of the language used, conduce to the stated result.

■ 1. The section in question is an amendment to a statute imposing a state income tax. The apparent purpose of the amendment was to provide the means for the collection elsewhere by the Attorney General of the state income tax thus imposed. It was presumably deemed necessary, in connection with that objective, to give other states a reciprocal right to sue for their taxes here. But since the dominating legislative concern was the collection of New Jersey *state income taxes,* there is no reason to infer an intent to allow foreign taxing authorities to sue here for *local taxes* of any kind. The Legislature was not here concerned with facilitating actions in other states to collect taxes levied locally in New Jersey, and there was no occasion to afford reciprocity in relation thereto. Note the absence from our statute of authorization for any New Jersey local official to sue elsewhere, in contrast to the express grant of such permission in the comparable New York reciprocal statute, which generally is cast in the same framework as our act. Laws of New York 1962, c. 677, *art.* 25, § 902.

2. Plaintiff represents that its research discloses that of the 50 states 42 have enacted tax reciprocity statutes allowing their courts to be used to collect taxes of other states; and that, of these, 22 employ language expressly including a "political subdivision" of the other state as among the en-

tities permitted to sue. See, *e. g.*, 12 *Purdon's Penna. Statutes* § 1292 (adopted August 14, 1963); *Laws of New York* 1962, *c.* 677, *art.* 25 (adopted April 19, 1962).

Thus, with a choice of two types of expression commonly used in reciprocity statutes of other states, one of which would have unequivocally allowed actions here by political subdivisions of foreign states, the New Jersey Legislature eschewed the latter option. Under the circumstances this must be accounted persuasive evidence that the Legislature did not intend to allow actions here by political subdivisions. *Cf. Keenan v. Essex Cty. Bd. of Chosen Freeholders*, 101 *N. J. Super.* 495, 507 (Law Div. 1968), aff'd 106 *N. J. Super.* 312 (App. Div. 1969).

3. The courts of Pennsylvania do not regard a local tax enacted under state legislative authorization as being a "state tax" for purposes of the prohibition in the authorizing statute of local taxes on transactions, subjects, etc., then or thereafter "subject to a state tax." 53 *Purdon's Penna. Statutes* § 15971. *National Biscuit Co. v. Philadelphia*, 374 *Pa.* 604, 98 *A.* 2d 182 (Sup. Ct. 1953).

In view of the affirmative indicia of legislative intent in this particular regard discussed above (especially points 1 and 2) we see no point in appraising precedents as to whether a local tax, generally speaking, can be considered a state tax for other purposes, or theoretically. See *Jersey City v. Martin*, 126 *N. J. L.* 353, 360 (E. & A. 1941); *cf. National Biscuit Co. v. Philadelphia, supra; McClelland v. Pittsburgh*, 358 *Pa.* 448, 57 *A.* 2d 846 (Sup. Ct. 1948).

In arriving at our conclusion herein we have not given any weight to the traditional rule against one state enforcing the revenue laws of another, as we have been urged to do by defendant. Annotation 165 *A. L. R.* 796 (1946). There is firm support for the view that the stated doctrine would not now be applied in this State as a matter of common law. See *Pennhurst State School v. Estate of Goodhartz*, 42 *N. J.* 266, 271 (1964). But we need not debate what common law would dictate in the present controversy were we not faced

with a statute undertaking to control the special subject of permission of actions in this state for recovery of taxes on incomes levied outside our borders. We have such a statute. It can hardly be gainsaid that in fixing specific terms and conditions for the maintenance of such actions in this State the Legislature by plainest implication was declaring that where such terms and conditions did not exist the action was not to be permitted. Thus, within the general category of foreign taxes on or measured by "income," of which the Philadelphia wage tax is concededly a species, the Legislature must by enactment of *N. J. S. A.* 54:8A–46(b) be deemed to have preempted that particular field both affirmatively and negatively.

In short, if, as we hold, the Philadelphia wage tax is not a "State" tax on incomes, the Legislature has manifested a directive that our courts not be open for its recovery. We have no occasion to, and therefore do not intimate whether foreign taxes clearly not referable to income, such as those on personal property, real estate, etc., are recoverable in the courts of this State.

In view of the foregoing conclusions we need not consider questions argued relating to recovery of interest and penalties or as to the application of any statute of limitations.

Affirmed.